Good morning. Last day of the week. We have three appeals to hear this morning. Judge Jopar and I appreciate our colleague from the Northern District of Alabama, Judge Dave Proctor, who is assisting us here with our work this week over and above the duties that we have in his court. He's sat with us many times and it's always good to have a district judge who's familiar with our precedents and how they work or don't work. Counsel, we're familiar with your cases. The authorities cited in your briefs and at least portions of the record that we've reviewed. So you don't have a lot of time this morning. I'm going to get straight to the heart of your argument. Please pay attention to the traffic lights. When the red light shines, it's time to stop. As Judge Larry Edmondson used to say, don't treat the red light as aspirational. And if you're answering a question from the court, of course, you can finish your answer, but otherwise be mindful of our time. Our first case is Borfa. Is that right? Borfa versus the Secretary, Mr. Stoler. Good morning. May it please the court. My name is David Stoler. I'm a private attorney from Orlando, Florida. So the issue that we have here is there is a petition filed, a U.S. citizen trying to help a spouse obtain an immigrant benefit. And in a prior marriage, the beneficiary, with the beneficiary, the beneficiary was prior, married before, sorry, and the government had made a determination that he had entered that marriage for the purpose of evading the immigration laws. And there's a provision of the Immigration and that if USCIS has ever made that determination in the past, that there was a prohibition on the approval of a subsequently filed immigrant visa petition. Now, the vast majority of circuits have said that this kind of decision, the revocation of a visa, of an approved visa petition is a discretionary determination where judicial review is barred, right? And I agree. You're absolutely right. Yeah, the vast majority of the circuits, right? Right. And I know your argument is, well, we've got this underlying determination that's a legal determination that ordinarily, if it was at the eligibility stage, at the threshold, right, it could be reviewed. But now that it's being determined after the fact and the revocation is based on that, that discrete determination should be reviewable as well, right? That's your argument? Correct. And I think we all agree. I mean, I think the government would say the same as I'm going to say. Here's one of the problems I have with your argument, though. Do you agree with me that, let's say the Secretary thought that there had been a sham marriage. It could never, the Secretary nevertheless would have the discretion not to revoke, wouldn't he? That's true. Because the way the language reads, discretionary as it is, it is may revoke. It is not a shall. He doesn't have that discretion at the initial decision, does he? Correct. And that's the basis of the argument. To me is why this is a discretionary decision from which our review is barred. Well, Your Honor, the problem that that creates is I could file seven I-130s, I could get seven approvals, and I could get seven revocations. Yeah, you could. Or the Secretary could decide not to. It would be totally within the Secretary's discretion. And Congress has told us that when it's within the Secretary's discretion, we can't review it. But Congress also says that when the language of the statute says shall, there is authority in here in the Court to consider the determination made by the Secretary. Yeah, but the problem is the determination we're dealing with, revocation, is a may. Yes. Right. So, I mean, but the whole idea is then the statutory scheme then doesn't quite make sense in that regard because then in theory When the statutory scheme, when the argument is that the statutory scheme doesn't really make sense in that regard, that sounds like a problem that you take to Congress, not to us. And understood. I mean, I understood that the Court's not here to legislate to tell us what Congress said. Congress uses the words it uses, and it says what it says, and the Courts say what those things mean. The problem is, is that it creates this likely possible circle in cases like this where the agency knew, should have known, but made a mistake, at least from its perspective, I would imagine, approved the petition, comes back, realizes its mistake, and now the Petitioner is left without recourse to go to the Federal court to seek review over something that we all agree upon is reviewable under the statute. Yeah. It seems to me, though, the difference is on the front end, at the threshold level. It doesn't, the Secretary has to make a decision, and that's reviewable, and there's no, the Secretary cannot say, yeah, I think it's a 51 percent chance this is a marriage sham, but equities are such that we're going to allow the person to stay in the country. Correct. That could be a decision. Here, I think Judge Pryor's point is this. It could go either way. The Secretary's, it's not reviewable either way if the Secretary exercises discretion not to revoke, and so the question I have is under what statutory authority do we look through the type of decision, and Congress has said this type of decision is discretionary and look through to the basis of the decision. Explain that to me. That's the problem. I think what Chief Judge Pryor is saying is you don't get there because it's may, and because that's discretionary, we don't care what the underlying reason is, and I mean this with all due respect. It's form over substance, I think, and that's what the Sixth Circuit said in JOMA. Like, let's not look at what the form of everything is. Let's look at the substance of it. If you're revoking based on this item that's clearly reviewable, and all the federal courts should have— Let's not look at the language of the statute, okay? It's that the Secretary, quote, may at any time for what he deems to be good and sufficient cause revoke the approval of any petition approved by him, right? That's hard to imagine something that sounds more discretionary. I agree that it is completely discretionary. Understood. I agree that most of the courts that have talked about this have said it's a discretionary— But you would eviscerate that. So what you would do is you would say, in your regime, the Secretary, if the Secretary determines there's a sham marriage, chooses not to revoke, no problem with that. That doesn't get reviewed. Well— But, right? There's no way that gets reviewed. Well, yeah, you wouldn't, I guess you wouldn't, you wouldn't ask for review of an approval, and the government's not going to follow the— There's not anything to be done, right? But if he chooses to revoke, because you say that underlying determination is one that shouldn't be shielded from judicial review, it would get reviewed. So it would only get reviewed if the Secretary chooses to exercise his discretion to revoke, even though he has discretion both ways. And I understand the conundrum, and that's, I think, why most of the courts that have come look at this issue have said it's may, it's discretionary. I think the court's issue is where's the manageable standard in the statute that's going to allow us to figure out what is the good cause, at least when we're dealing with the Board of Immigration Appeals, that's the way they look at it. But where's the manageable standard that we have to take a look at? It's the language is may, in the exercise of the Secretary's discretion, may do this. Okay, understood. But if the basis is something that is clearly stated in the— I mean, the Secretary could just say, well, if I'm going to revoke an approved visa petition because of a sham marriage, I want there to be clear and convincing evidence of it, as opposed to a preponderance, right? Because it's a revocation. Could just do that, right? Well, the statute doesn't provide that. But insufficient cause. He could just say, you know, within my discretion, before I'm going to—since I've already approved it, you know, I don't—51% is just not good enough for me. I want it to be clear and convincing evidence or beyond a reasonable doubt even, right? See why it's discretionary. Well, understood. But then that's just giving the Secretary for any, you know, any willy-nilly reason. And I guess at the heart of it— It's Congress giving the Secretary. That's what Congress said in the statute. Right. Which—and again, I understand that that doesn't—you know, the way the statutory scheme kind of fits all together. How does 1155, you know, work with 1154C? You know, we don't know. We don't get there. I mean— What defines the bar to review? What specifically defines the bar to review? I think it's in section 1242A2B. The general prohibition on the federal courts getting involved in discretionary determinations. I think that's where all this— It goes, you know, back into the statute, the whole judicial review provision of the Immigration and Nationality Act. 1252, right? 1252, yes. 1250. I'm sorry. Yes. It's 242 under the INA. I apologize. The federal court—I get a little confused. Could have said, we're going to give this discretion and it's not going to be reviewable unless the revocation is based upon some statutory factor that would have been reviewable. Congress could have said that. Sure. On that same provision itself, the Eleventh Circuit's case in Patel, you know, the government and the case that made it up to the Supreme Court on this—on the issue of 1252A2B, I mean, the position that the Eleventh Circuit took was different than the government and different from a lot of the other circuit courts of appeal. And for 20-odd years, we had been, you know, handling cases in that way. But eventually, the Supreme Court took 1252A2B in a different way. So, I mean, you know, the statute, I understand that Congress could have clarified what they meant. And it, you know, from my perspective, it seems odd that we all agree that there's a reviewable decision underneath this discretionary determination and that the agency is allowed to make the mistake and then skirt judicial review. And from my perspective as a practitioner, what I have to do in these cases is I have to file a new I-130, I have to make it patently clear to the U.S. CIS, look, there was a prior denial in this case, because I want to avoid having to come back up through the system again. But it seems like what we're doing is, instead of making the agency actually establish that its decision, there's substantial evidence in support of its decision, substantial and probative evidence of the underlying marriage fraud, the agency gets a free pass. And so we all agree that it's discretionary on 1155. We all agree that there's a nondiscretionary determination on 1154C. But in this situation, it's so sorry, too bad, so sad. You've just got to start all over and hope that the agency does the right thing. And while we, you know, we would imagine that Congress knows the statute and knows the law when it, you know, when it makes these changes, although it's been a while since they've made a substantial change to the Immigration and Nationality Act, I just can't think of Congress wanting or thinking that this is the way that it was going to go, yet that's what the language tells us is there. And again, I would go back to the Sixth Circuit's approach, which is look at the substance, don't look at the form. And while I understand the discretionary part of 1155, there's a manageable legal standard there in 1154C, and these folks should get an opportunity to have their case heard. My time's up. Thank you. Mr. Grawlitt. Good morning, Your Honor. Good morning, Your Honors. James Grawlitt, appearing on behalf of the United States. Visa revocations are unreviewable decisions by the district courts. This is not controversial. It's not even novel. Well, it is in the Ninth Circuit. Yes, Your Honor, that's correct. Every circuit outside the Ninth Circuit has ruled that visa revocations are non-reviewable discretionary decisions under 12A2B2. They'd be a little more fuzzy in the Sixth Circuit. Right. They do. Yeah. Yes, Your Honor. But I was, the Ninth, I will, I will just state the Ninth Circuit's case and international, A&A and. It's certainly more controversial than you let on. Yes, Your Honor. Controversial, I would say controversial maybe in the Ninth, but then even the Ninth Circuit was decided before the most recent statute. The statute was amended in 2004 after A&A. I will, I will admit that the statute is amended to really removing the visa notification, the notification requirements and adding the language at any time. What do you say about our decision in Mendoza? Your Honor, I'm not, I'm not familiar with your decision in Mendoza. Well, I thought we had said that, that the denial of an I-130 petition, not at least at the eligibility stage, that there was reviewability. Yeah, Your Honor, there is reviewability of a denial of an I-130. That's undisputed in almost every circuit. But this case involves a revocation, and the revocation, the plain language of the statute of revocation is discretionary, as this Court's already discussed. The language of the statute specifically states may. It's Maya Rodriguez. That's, I've got my case names mixed up. Are you familiar with that? Oh, Your Honor. Maya Rodriguez? No, Your Honor. Okay. But, Your Honor, the basis of the case... Let me, let me help you with that case, Maya Rodriguez from 2009. We considered the same jurisdiction stripping provision there. And in that case, a non-citizen was seeking review of an agency decision denying his application for temporary protected status. And in that case, we acknowledge that the ultimate decision of whether to grant the status to a non-citizen is undisputedly within the discretion of the Secretary, just like here. But we caution that simply because the Secretary has ultimately, has the ultimate discretionary authority to grant an immigration benefit does not mean that every determination made by USCIS regarding a non-citizen's application for that benefit is discretionary. And we explain that the agency makes many, along the way to a discretionary decision, the agency makes legal decisions based on the facts of the case. And we concluded that there was jurisdiction because in that case, the applicant was challenging the determination that it did not meet the statutory requirements. So, I realize you haven't read the case, but what do you think of that? Your Honor, that's pretty much the law pre-Patel regarding adjustments to status. Eligibility requirements pre-Patel were originally reviewable, but there's been many, almost every case involving a visa revocation deals with the issue of eligibility. Let me suggest to you that the difference is that by statute in that determination, the Secretary can't grant temporary protected status unless he first determines the alien is statutorily eligible. Okay? That's a non-discretionary determination. And that's what we were reviewing. Yes, Your Honor. But most of the time, when someone's eligible for an immigration benefit, it's a legal standard. Like in Karpova, this is court review. The problem is here, the marriage determination, the Secretary can determine whether or not he wants to review that or not. And for a revocation, Secretary has the discretion, I think, you tell me if I'm wrong, to not decide to revote based on a sham marriage. Absolutely, Your Honor. That's correct. To say, look, you know, once I've made that determination, I'm not going back on it. That's, you're correct. But then it's discretion, right? Yeah, yeah. Yes, Your Honor. That's the reason for that is nothing in the statute requires revocation, even if there's a finding of some marriage sham. I would agree. I would agree, Your Honor. There's no authority that requires a revocation of a visa based on marriage fraud. And under ACFR 205-2, it's permissive for a revocation even under the regulations. And there's no authority that requires. And this is part of the reason we've also got cases where we say, look, if the you know, under regs or agency precedent, that may be reviewable. But we don't have that here either. We don't have a determination about that. That's correct. That's correct, Your Honor. There is no allegations of the agency. In this case, you see at USCIS not following procedures in this case. So I don't believe those arguments would be valid in this case. Further, I think the concern of JAMA was this gamesmanship. And whether a visa would be revoked one day, or a visa granted one day and then revoked next. That is not the case here. The visa was granted in 2015, and it wasn't revoked for another two years. So there's no evidence of gamesmanship here. To construct a rule that says that if you're just using your discretion to revoke, but relying upon a non-discretionary factor to revoke, would timing make a difference? Your Honor, I don't. I think that seems like that's getting even more into the weeds in terms of we'd have to design a test for, well, one day. The next day certainly suggests an attempt to evade review. Two years later, as you're arguing, may or may not suggest that. What about three months? Your Honor, I think the timing comes in. Because I think if they were, I think the timing comes in to show that this kind of this fear that JAMA had, that they make this exception that there would be gamesmanship is not, it's just not here in this case. It is two years later, procedures were followed, and that's some of it. The reason I'm asking this is I think your counsel on the other side has done a great job explaining, we need manageable standards here. It seems to me if we weed into this policymaking side of things where we're trying to decide, all right, we're not going to allow the government to shelter things from a review, we're going to have to determine, okay, what do we look at to determine whether or not the government's trying to shelter a discretionary decision from review? And that just seems to me to be another problem. I don't quite understand what the Sixth Circuit's approach to that's going to be, but I'm curious what ours would be if we followed that suit. Well, Your Honor, I don't think those fears are warranted because there is procedural protections under the regulations. Under Regulation ACFR-2052, the agency's required to file, I guess, issue a notice of intent to revoke where opposing counsel gets an opportunity to submit evidence and briefings in support of this position. Even after, if it's denied, the visa is revoked based on good and sufficient cause, there is a right to appeal to the Board of Immigration Appeals. And I think a lot of times we forget the Board of Immigration Appeals is not part of DHS, it's part of the Department of Justice. So they're getting some judicial review in that case. And even if they did, they could also get judicial review by refiling I-130. I mean, is it the easiest process? Probably not. But they could, and particularly if counsel let the court know it was denied before, they would deny it and he would be able to get judicial review in court that way. And plus, with the bad... But if I go, if I tick off for you the other circuits' decisions, would you know them on this issue? Your Honor, there's multiple cases on this issue. It seems like the First Circuit has said no review. That's Bernardo versus Johnson. Is that right? That's correct, Your Honor. Nourish Tashar versus Jadu, Second Circuit, something like that. Is that the position of the Second Circuit? No review? Yes, Your Honor. And Gillen's the Third Circuit? Gillen is the Third Circuit. Palfiette is the Fourth Circuit. Gannon is the Fifth Circuit. Then we have the Schizophrenic Sixth Circuit. They tell us in one that it's unreviewable, and in another, well, it might be somewhat reviewable. The Eighth, the Seventh Circuit, Ilkadar. The Eighth Circuit, Adewabit, I guess is the name of that case. Green versus Napolitano is the Tenth Circuit. And Renault is the D.C. Circuit, right? That's correct, Your Honor. And yes, I want to mention that the Seventh and the Tenth specifically dealt with this exact issue in front of this Court. They found that a visa revocation based on marriage fraud was non-reviewable. And every other district court outside the Sixth has as well. The District of Minnesota and Chairman's, the Vargas case, the opposing counsel cites in his brief and as the district court. But basically, all those decisions go back to the plain language of the statute. And as this Court discussed, it's discretionary. The word's may. Yeah, and the statutes that matter are 1252A, 2B2, and then 1155, right? That's correct, Your Honor. The language of 1155 is discretionary because it uses may, at any time, upon, shall, or not shall, but. For what he deems to be good and sufficient cause, right? Yeah, deemed, and specifically, all those courts go back to that language. And the Vargas, the Eastern District of Pennsylvania, dealt exactly with this issue. And they went back. They expressed the same concerns that the Jama Court expressed. But ultimately, they went back to the statute. And the statute, as every court outside the Ninth has found, is just purely discretionary. And that's the, that was the basis for the visa revocation. And to move on to the point number two, as the Court already made, that there's no regulation that requires the government to revoke a visa. There could be circumstances where the government doesn't revoke it. Maybe the evidence of marriage fraud is protected by, say, violence, the Violence Against Women's Act. We wouldn't be able to revoke it. There have been instances where the Secretary would use this discretion, and could use this discretion not to revoke. Furthermore, almost every court has dealt with, revoked these cases. While I wouldn't say they're exceedingly rare, I think there's only about 83 visa revocations throughout the country. When it was briefed in Bernardo, for Cerceris, for, from the Supreme Court, I believe there's only 20. Even this Ninth Circuit hasn't dealt with it in many occasions. But almost all these cases deal with an I-140 employment, revocation of employment visa, based on a legal standard or an eligibility requirement. Which is exactly. Well, and you're, and what you say is that even in the rare event where it is revoked, it's not the end. Because there could still be a restart of the process to get a visa petition approved, right? That's correct, Your Honor. They could, the plaintiffs or appellants could refile an I-130, and if denied, seek review in the district court. And then there's a separate removal process. That is correct. Yeah, there's a separate removal process as well, that where an alien could go into, if you put in the immigration proceedings, we get, would be able to seek possible relief in front of the immigration court. The only thing that's barred from review is just the revocation. Your Honor. The only thing that's barred from review is just the revocation. That's correct, Your Honor. The only thing that's barred from review is the revocation, based on the plain language. And that's why we believe the government, the district court's decision should be affirmed. Barney. Okay, thank you. Mr. Stoler, you saved a few minutes for rebuttal. Let me tell the court a story. Okay. So, we all agree that an alien who's engaged in a, where the government has determined that there's a prior marriage that's fraudulent, shouldn't get a green card. This court took up a case a while back, and it was published, called Avulija. It's a case I handled. It had to do with the doctrine of consular non-reviewability. But let me tell you what happened in that case. So, Albanian national marriage, a United States citizen, the I-130 gets approved. They go to the consulate. The consulate has a problem with the marriage. They do what's called a consular return, send it back to USCIS. USCIS ultimately says, this is an 1154C determination. Case gets denied. They get divorced. The same gentleman against whom the 1154C determination has been made marries another U.S. citizen. USCIS approves the petition. It goes to the consulate. The consulate says, we're denying, we're not going to touch the I-130, but we're going to say you engaged in fraud because of that bogus marriage. And if you give us a waiver to get around that fraud issue, we'll allow you to come into the United States. Now, the whole statutory scheme is to make sure that someone against whom there's been an 1154C finding doesn't come to the United States. But when you leave this stuff to the Secretary of the Department of Homeland Security and the Secretary of State in this situation, you run with somebody who might ultimately make it into the United States after a 204C, 1154C determination has been made, where they Let me tell you something. If you're trying to convince me that immigration policy doesn't always make sense, I'm already persuaded. You don't need to persuade me either, Chief Judge. What I'm trying to say is, is that I would say the same thing about congressional statutes. They don't always make sense either. Well, that's the reason immigration policy doesn't always make sense, is because it is the product of congressional policy. Yes. Right? Congressional policy. And if you expect me to have to make sense of that policy to fix their problems, I'm sorry, that's just not my role. No. I don't have that authority. No, not asking that you do. What I'm trying to get to is, again, it's an issue of form over substance. This guy, Abulikha, the form that he went through defeats the whole substance, the underlying purpose of the Immigration and Nationality Act. You know, the late Justice Scalia, one of my favorites, said, long live formalism. Formalism is what separates a government of laws from a government of men. Something to be said by that. But apparently, just a few seconds more, if I could. Ultimately, what we're doing here is we're rewarding, in some sense, the Secretary for making a mistake, and we're making the petitioner and the beneficiary go about this all over, again, at great expense. When there's an underlying issue that we all know there's review available for. I thank you for your time.